UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GIOVANNI SCAVO,

                           Plaintiff,

             -against-

CMA CGM S.A., et al.,

                      Defendants.
---------------------------------------------------------X

                                         **REPORT AND**
                                       **RECOMMENDATION**
                                  16 CV 5479 (ENV) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

      On October 1, 2016, plaintiff Giovanni Scavo commenced this action against defendants

CMA CGM S.A. ("CMA"), the M/V RANJAN, the M/V MAX WONDER, and Vroon, B.V.,[1]

seeking damages for injuries allegedly sustained on October 19, 2013, when plaintiff was

working as a longshoreman on the dock of the containership, the M/V RANJAN.  On July 17,

2020, defendant CMA filed a motion for summary judgment, pursuant to Rule 56 of the Federal

Rules of Civil Procedure.  On that same day, the motion was referred to the undersigned by the

Honorable Eric N. Vitaliano, United States District Judge, to prepare a Report and

Recommendation.

      For the reasons set forth below, the Court respectfully recommends that defendant's

motion for summary judgment be denied.

---

[1] On May 18, 2017, the court, upon motion of the plaintiff, dismissed the claims against the M/V
MAX WONDER and Vroon B.V., ECF No. 15.

FACTUAL BACKGROUND

Plaintiff Scavo began working as a longshoreman in 2005, helping to facilitate the discharge and loading of containers off and onto containerships. (Def.'s 56.1 Stmnt[2] ¶¶ 2, 4; Pl.'s 56.1 Resp.[3] ¶¶ 2, 4; Scavo Dep. Tr.[4] at 10, 14). On October 19, 2013, the M/V RANJAN was berthed at the Red Hook Container Terminal ("Red Hook Terminal") in Brooklyn to discharge certain containers and load others. (Def.'s Mem.[5] at 2). On that date, plaintiff Scavo was working as a longshoreman for the Red Hook Terminal. (Def.'s 56.1 Stmnt ¶ 1; Pl.'s 56.1 Resp. ¶ 1; see also Red Hook Container Terminal Incident Report, Ex. D to Walsh Aff.; Scavo Dep. Tr. at 17, 42). At the time of his accident, Mr. Scavo and the rest of the longshoring crew had completed container discharge operations for the M/V RANJAN. (Def.'s 56.1 Stmnt ¶ 6; Pl.'s 56.1 Resp. ¶ 6; Scavo Tr., Ex. E at 46).

It is undisputed that at the time of the injury, Mr. Scavo had climbed a stationary ladder on the ship and was standing on a platform at the top of the ladder in order to place twistlock "shoes" on a container. (Def.'s 56.1 Stmnt ¶¶ 4, 5, 7; Pl.'s 56.1 Resp. ¶¶ 4, 5, 7). The "shoes" are secured to a platform on the vessel deck and connect to the containers, securing them in place when they are stacked on the vessel. (Def.'s 56.1 Stmnt ¶ 4; Pl.'s 56.1 Resp. ¶ 4). Shoes are attached when the containers are being loaded onto the vessel, and then removed when the

---

[2] Citations to "Def.'s 56.1 Stmnt" refer to Defendant CMA CGM S.A.'s Rule 56.1 Statement of Material Facts, dated May 8, 2020, ECF 65-11.

[3] Citations to "Pl.'s 56.1 Resp." refer to Plaintiff's Rule 56.1 Response to the Defendant's Statement of Material Facts and Counterstatement of Material Facts, dated June 11, 2020, ECF No. 65-30.

[4] Citations to "Scavo Dep. Tr." refer to the Deposition Transcript of plaintiff Giovanni Scavo, dated October 3, 2017, Ex. E to the Affirmation of John J. Walsh, Esq., dated May 8, 2020 ("Walsh Aff.").

[5] Citations to "Def.'s Mem." refer to defendant CMA CGM S.A.'s Memorandum of Law in Support of Its Motion for Summary Judgment, dated July 17, 2020, ECF 65-10.

containers are being discharged.  (Def.'s 56.1 Stmnt ¶ 4; Pl.'s 56.1 Resp. ¶ 4; Scavo Tr., Ex. E at 14, 28, 30, 45).

Mr. Scavo claims that a crew member had closed the grate at the top of ladder, which required him to open the grate in order to get from the top of the stationary ladder onto the platform.  (Def.'s 56.1 Stmnt ¶¶ 5, 7; Pl.'s 56.1 Resp. ¶¶ 5, 7; Scavo Tr., Ex. E at 40, 48).  He alleges that as he was stepping from one side of the platform to the other, his left foot went through the grate, causing him to fall and suffer injuries.  (Def.'s 56.1 Stmnt ¶¶ 4, 5, 7; Pl.'s 56.1 Resp. ¶¶ 4, 5, 7).  He alleges that the opening in the grate was a defective condition on the ship.

On October 1, 2016, plaintiff brought suit against the vessel's time charterer, CMA CGM, and against the M/V RANJAN, and its successor name, the M/V MAX WONDER, the name given to the vessel following its sale to Vroon.  (Def.'s 56.1 Stmnt ¶ 9; Pl.'s 56.1 Resp. ¶ 9).  In the Complaint, plaintiff alleged that CMA was the owner of the M/V RANJAN, a claim denied by CMA; instead, defendant now contends that at the time of the accident, the M/V RANJAN was owned by Ranjan Schiffahrtsgesellschaft GmbH & Co. KG ("RSG" or the "Owner").  (Def.'s 56.1 Stmnt ¶¶ 10, 11; Walsh Aff., Ex. B ¶ 18; Grandjean Decl.[6] ¶ 6).  CMA did concede that it was the time charterer of the vessel pursuant to a June 19, 2013 New York Produce Exchange Form Time Charter entered into between RSG, as owners, and CMA, as time charterers.  (Def.'s 56.1 Stmnt ¶ 13; Grandjean Decl. Ex. A).  Plaintiff did not name RSG as a defendant in the Complaint.  (Compl., Ex. A).

Defendant CMA moves for summary judgment on the grounds that under the Time Charter, CMA was only the time charterer, whose sole function was to designate the containers that the stevedores were to load on and discharge from the vessel.  (Def.'s Mem. at 3).  As such,

---

[6] Citations to "Grandjean Decl." refers to the Declaration of Charlotte Grandjean, dated October 9, 2019, ECF 65-9.

CMA contends that it had no responsibility or control over the condition of the deck, did not
supervise or employ any of the crew members of the M/V RANJAN, and is not responsible for
the injuries to longshoremen as a result of the conditions of the ship.  (Id.)


## DISCUSSION

I.     Estoppel Arguments

Before considering defendant's motion for summary judgment, the Court considers
plaintiff's claims of estoppel.  Plaintiff  asserts that CMA should be precluded from  arguing that
it is not responsible for the condition of the vessel.  Plaintiff contends that in moving for
summary judgment, defendant ignores its prior representation to plaintiff's counsel that CMA
would assume the duties of the M/V RANJAN's owner, inducing the dismissal of plaintiff's
claims against several defendants, including the M/V RANJAN and Vroon, and leading plaintiff
not to amend the Complaint to add the M/V RANJAN's owner as a defendant.  (Pl.'s Opp.[7] at 1,
3).  Plaintiff argues that CMA should be estoped from arguing that it had no legal duty to
maintain the vessel -- the argument CMA is now advancing in support of the motion for
summary judgment -- given its representation that it would assume the duty of the vessel's
owner.

A.   Legal Standard - The Longshore and Harbor Workers' Compensation Act

The Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901
et seq., follows the exclusive remedy scheme of workmen's compensation laws by providing for

---

[7] Citations to "Pl.'s Opp." refer to Plaintiff's Memorandum of Law in Opposition to the Motion
For Summary Judgment and in Support of the Cross Motion to Strike Ms. Grandjean's Declaration, filed
July 17, 2020, ECF No. 65-29.

fixed compensation payments and limits a stevedore-employer's total liability for a longshoreman-employee's injuries.  33 U.S.C. § 905(a) (providing that the benefits paid by an employer under the LHWCA are exclusive and in place of all liability of employer to employee). See also Gaudet v. Exxon Corp., 562 F.2d 351, 356 (5th Cir. 1977) (holding that Congress intended the LHWCA to provide injured workers with compensation benefits in place of potential recovery in tort action against employer), cert. denied, 436 U.S. 913 (1978); Haynes v. Rederi A/S Aladdin, 362 F.2d 345, 350 (5th Cir. 1966) (holding that Congress intended LHWCA compensation to indemnify injured workers in place of any common law damages against employer), cert. denied, 385 U.S.1020 (1967); Duczkowski v. Hyundai Am. Shipping Agency, Inc., No. 08-2897, 2010 WL 5316134, n.4 (D.N.J. Dec. 20, 2010) (same).

The stevedore-employer, however, is not always the party actually responsible for a longshoreman's injury because longshoremen often perform work on third party-owned vessels, loading or unloading cargo.  See G. GILMORE & C. BLACK, The Law of Admiralty § 6-4, at 251 (1957) (master stevedore or independent contractor, not shipowner hires harbor workers to load or unload vessels owned by third parties).  Consequently, while the stevedore-employer carries workmen's compensation coverage for injuries to its employees that occur both on the wharf and on third party vessels, the employer's LHWCA coverage does not absolve a negligent shipowner or charterer of liability for a longshoreman's injury.  See 33 U.S.C. §§ 905(b), 933(a) (1982) (providing injured employee with right of indemnity against negligent third-party shipowner).

Section 905(b) of the LHWCA provides in relevant part as follows:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title. . . . The remedy

> provided in this subsection shall be exclusive of all other remedies
> against the vessel except remedies available under this chapter.

A vessel is defined in LHWCA as follows:

> The term "vessel" means any vessel upon which or in connection
> with which any person entitled to benefits under this chapter suffers
> injury or death arising out of or in the course of his employment,
> and said vessel's owner, owner pro hac vice, agent, operator, *charter
> or bareboat charterer,* master, officer, or crew member.

33 U.S.C. § 902(21) (emphasis added).  The remedy provided to the longshoreman under the

LHWCA against the vessel, as defined in the statute, is the longshoreman's exclusive remedy

against the vessel.  Griffith v. Wheeling Pittsburgh Steel Corp*.,* 521 F.2d 31, 40 (3d Cir. 1975).

Thus, Section 33(a) of the LHWCA permits an injured longshoreman to both receive

compensation benefits from his employer and also pursue a tort action against a negligent third-

party shipowner or ship charterer.  See 33 U.S.C. §§ 902(21), 933(a).

In the instant case, the LHWCA authorizes a longshoreman such as plaintiff to maintain

an action against the owner of the vessel, the M/V RANJAN.  However, since plaintiff dismissed

his claims against the RANJAN and did not sue RSG, the owner of the vessel, the question is

whether plaintiff may maintain an action against the defendant CMA CGM, who was a time

charterer.  Defendant argues that since it had no duty to maintain the vessel, it cannot be held

responsible for plaintiff's injuries and thus summary judgment should enter in defendant's favor.

B.  Analysis

According to plaintiff, after the defendant filed an Answer to the Complaint, the parties

conferred and  CMA's counsel at the time, George Chalos, Esq., represented that "CMA would

assume the duties of RANJAN's owner [RSG] and defend the matter on the merits."[8]  (DeGroot

Aff. ¶ 3; Pl.'s Opp. at 6).  Plaintiff then submitted a letter to the court memorializing the

conversation in which CMA assumed responsibility for the vessel owner and voluntarily

dismissed the claims against the remaining defendants.  Plaintiff also did not move to amend the

Complaint to include any additional parties.  (DeGroot Aff.[9] ¶¶ 4, 5).  Plaintiff's letter, dated

May 17, 2017, states:

> I represent the Plaintiff in the within matter.  I am now
> voluntarily dismissing MAX WONDER, IMO 9396622,
> VROON, BV.  They were named if there has to be in rem
> jurisdiction as CMA CGM, SA has filed an answer as an
> owner of the RANJAN I do not have to invoke in rem
> jurisdiction to proceed.

(DeGroot Aff., Ex. 2, ECF No. 65-15).  The letter was So Ordered by the Honorable Eric N.

Vitaliano.  (Id.)  According to plaintiff's counsel, at the time Mr. Chalos was retained, he

purported to represent the interests of all defendants and the parties had agreed that procedurally

it would be more efficient to have CMA stand in place of the vessel's owner and have plaintiff

dismiss the matter against the other defendants.  (Id. ¶ 10).

Thereafter, the parties engaged in extensive discovery, including the exchange of

documents, deposition of the plaintiff and a representative of CMA, as well as expert discovery.

(Id. ¶ 6).  In November 2018, the parties represented that discovery was complete and they were

scheduled to proceed to mediation when CMA terminated its counsel and retained the Freehill

Firm, defendant's current counsel.  (Id. ¶ 7).  According to plaintiff's counsel, defendant's new

counsel "acknowledges that RANJAN[10] agreed to accept the tender of defense by CMA and that

---

[8] CMA denies that Mr. Chalos made these representations.  (Def.'s Response to Plaintiff's
Counterstatement of Material Facts, ¶ 10, ECF No. 65-41).
[9] Citations to "DeGroot Aff." refer to the Affirmation of Robert J. DeGroot, Esq. In Opposition
to the Motion for Summary Judgment, dated June 16, 2020, ECF No. 65-13.
[10] Here, plaintiff's counsel, Mr. DeGroot, appears to refer to RSG, the owner of the M/V

Mr. Chalos represented all of the Defendants."  (Id. ¶ 11, Ex. 13 at 2).  Plaintiff asserts that it was

only after the P&I Club [11] requested that CMA contribute to Mr. Chalos' counsel's fees that

CMA terminated his services and attempted to rescind his earlier representation regarding the

assumption of the vessel's duties.  (Id. ¶ 12, Ex. 3[12] at 41-42).

After terminating Mr. Chalos and retaining the Freehill Firm, CMA moved to reopen

discovery in order to pursue its argument that under the Time Charter Agreement, CMA was not

responsible for plaintiff's injuries.  (Pl.'s Opp. at 6-7).  Specifically, the defendant asked to

supplement its disclosures to add Ms. Grandjean, a member of the chartering department of

CMA, to testify about the responsibilities of the charter party and the owner.  (DeGroot Aff., Ex.

11 at 2).  In its letter to this Court requesting to reopen discovery, defendant's counsel stated:

> Not only is there good cause to reopen discovery for this
> limited purpose; there are extraordinary circumstances. The
> owner of the vessel [RSG] and its P & I Club. . ., although
> not sued in the case, had agreed to accept the tender of CMA
> CGM early in these proceedings and CMA CGM was defended
> by counsel retained by Ranjan and its P & I Club ("Ranjan
> Counsel").  The tender of defense having been accepted by
> Ranjan, CMA GCM thought it was held harmless by Ranjan and
> that it was being appropriately defended by Ranjan.  Hence, CMA
> CGM had no control of the dismissal.  Counsel for Ranjan
> approved, on behalf of CMA CGM, the dismissal of VROON
> from the case, leaving CMA CGM as the sole defendant.

(Def.'s Jan. 10, 2019 Ltr.[13] at 2).  Defendant further concedes in the letter that RSG breached its

agreement to defend, advised CMA that it was in liquidation, and that CMA would have to

undertake its own defense.  (Id.)  Since CMA had been relying on RSG to not only pay for the

---

RANJAN at the time of the events at issue.
    [11] "P&I" stands for Protection and Indemnity.
    [12] Exhibit 3 to the DeGroot Affirmation is a portion of the deposition transcript of Charlotte
Grandjean, in-house counsel for CMA.
    [13] Citations to "Def.'s Jan. 10, 2019 Ltr." refer to the January 10, 2019 letter submitted by
defendant in support of its request to reopen discovery, attached as Ex. 11 to DeGroot Aff.

defense but to pay any liability, CMA had left the defense in the hands of RSG's counsel and, as a result, had not identified witnesses who could support a motion to dismiss the claims against CMA, which claims it owed no duty as time charterer to a longshoreman for the maintenance of the ship. (Id.)  CMA argued that it had good cause to reopen discovery because even though a client is bound by the actions of his attorney, "'a party should not bear the consequences of attorney misdeeds when the lawyer "misled the client by reassuring him that the litigation was continuing smoothly when in fact it was suffering severely from lack of attention."'"  (Id. at 4 (quoting Hussain v. Nicholson, 435 F.3d 359, 368 (D.C. Cir. 2006))).

Plaintiff argues that the Court should apply principles of estoppel in order "to protect the integrity of the judicial process."  (Pl.'s Opp. at 8).  Even though CMA's representative, Ms. Grandjean, concedes that Mr. Chalos was retained to represent "all" of the defendants, and CMA's representations led plaintiff to take certain actions in the case, including not amending to add RANJAN's owner and dismissing the other defendants, now CMA is arguing that it did not assume the duties of an owner of the vessel.  (Id.)

In reply, CMA argues that plaintiff's claim of judicial estoppel fails for several reasons. First, defendant claims that because the alleged representation made by Mr. Chalos was not in writing and plaintiff's counsel has not provided any details as to when or by what manner this representation was made, the argument fails as a matter of fact because plaintiff "cannot establish the existence of such a representation."  (Def.'s Reply[14] at 2). Defendant also argues that an oral stipulation such as the one claimed by plaintiff here is not binding unless it is in writing, subscribed by the client or the attorney or reduced to the form of an order.  (Id. at 4

---

[14] Citations to "Def.'s Reply" refer to Defendant CMA CGM S.A.'s Reply Memorandum of Law in Support of Its Motion for Summary Judgment And In Opposition to Plaintiff's Cross-Motion, dated July 17, 2020, ECF No. 65-31.

(citing CPLR 2104)).  Citing cases in which courts have required settlement agreements to be in writing, see, e.g., Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 326 (2d Cir. 1997); Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1283 n.3 (2d Cir. 1996), defendant argues that "[g]iven the significance of the alleged oral agreement – waiver of a complete liability defense by CMA CGM – the circumstances here strongly suggest that such an agreement ought to have been in writing or in open court, which would have demonstrated at least some action on the part of CMA CGM to validate the agreement."  (Def.'s Reply at 5).

Defendant further argues that judicial estoppel does not apply in this case because "for judicial estoppel to apply the estopped party has *prevailed* in one phase of the case and has taken an inconsistent position in another phase."  (Def.'s Reply at 9 (quoting Intellivision v. Microsoft Corp., 484 F. App'x 616, 621 (2d Cir. 2012))).  Defendant argues that CMA has not prevailed on any legal theory in any phase of this case; there has been no finding that would be inconsistent with CMA's argument that, as a time charterer, CMA owed no duty to the longshoreman to maintain the vessel.  (Def.'s Reply at 9).

As for promissory estoppel, defendant argues that for plaintiff to rely on a theory of promissory estoppel, there must be a representation that was clear and unambiguous.  (Id. (quoting In re Complaint of High Stakes Fishing, No. 93 CV 7969, 1997 U.S. Dist. LEXIS 4713, at *8 (S.D.N.Y. Apr. 14, 1997))).  Arguing that the plaintiff has not made clear when the representation was made, where it was made or the exact wording, defendant argues that promissory estoppel does not apply.  (Id.)

Defendant also argues that the law of the case doctrine precludes litigating this issue.  (Def.'s Reply at 5).  As the Second Circuit noted in United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002), "when a court has ruled on an issue, that decision should generally be

adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise."  Defendant contends that in January 2019, it sought to reopen discovery to allow defendant to amend its Rule 26 Disclosures and add the Declaration of Charlotte Grandjean as a potential witness on the issue of whether CMA, as a time charterer, owed plaintiff a legal duty of care.  (Def.'s Reply at 5-8).  Although plaintiff argued that CMA was estopped from raising this defense based on the representation that CMA had agreed to assume the status of operator of the ship, this Court nonetheless allowed discovery to be reopened.  (Id. at 7 (quoting 10/4/19 Order[15] at 2-3)).  Defendant acknowledges that even though the Court's ruling "did not address explicitly the claim that CMA CGM agreed to assume the status of the operator of the ship, it was implicitly rejected. . . ."  (Id. at 8).

Contrary to defendant's last argument, this Court did not make any determination as to whether plaintiff had raised a valid estoppel claim; the Court merely allowed defendant the limited opportunity to provide the declaration of Ms. Grandjean, without deciding any of the issues that are currently before this Court on this motion.  Specifically, the Court noted defendant's explanation as to why there was good cause to reopen discovery, and why plaintiff opposed the motion to reopen discovery, but the Court merely found that defendant "has set forth good cause to reopen discovery," and noted that contrary to plaintiff's complaint about a change in defendant's strategy, the defendant "still intends to pursue a defense on the merits."  (Id.)  This latter statement was not intended to be a finding on the issue of estoppel or the bona fides of defendant's claim.  Thus, the Court finds that the law of the case doctrine does not preclude plaintiff's claims of estoppel.

---

[15] Citations to "10/4/19 Order" refer to this Court's Order, dated October 4, 2019, ECF No. 55.

With regards to the other arguments raised by defendant in response to plaintiff's equitable estoppel argument, the Court is unable to definitively determine at this time whether application of the doctrine is warranted.  It is beyond peradventure that a party is bound by the acts of its prior counsel.  See Link v. Wabash R. Co., 370 U.S. 626, 633-34 (1962).  Although the defendant does not directly deny that Mr. Chalos made the representations claimed by the plaintiff, the Court notes that defendant's representation as to what occurred between counsel prior to plaintiff's dismissal of the RANJAN as a defendant differs significantly from plaintiff's understanding.  While plaintiff claims that defendant's counsel indicated that CMA would be assuming the duties, and presumably the defense, on behalf of the RANJAN and its owner, CMA claims that it was represented by counsel retained by RANJAN and under the impression that RANJAN would hold CMA harmless from any liability in the case.  Nothing beyond defendant's current counsel's representation has been submitted to substantiate this latter claim, however, and therefore, the Court is not in a position to determine this question.  The defendant has not submitted any sworn statement in support of its position, and the Court is reluctant to accept counsel's representations, which are presumably based on hearsay since current counsel only appeared on the case long after these discussions occurred.  Since plaintiff's claim of estoppel raises a number of issues that may require a hearing and possibly further discovery, including an inquiry into the recollections of the various attorneys involved, the Court declines to make a recommendation on plaintiff's estoppel arguments.  As set forth below, the Court respectfully recommends denial of summary judgment on the grounds that material issues of fact remain in dispute on the issue of CMA's liability, and thus there is no need at this time to consider the

estoppel claims.  Accordingly, the Court respectfully recommends that plaintiff be permitted to renew his estoppel arguments[16] at a later date.

## II.   Motion for Summary Judgment

Turning now to defendant's motion for summary judgment, defendant argues that as a time charterer, CMA seeks summary judgment on the grounds that it is not responsible for maintaining the vessel and cannot be held responsible for plaintiff's injuries.  (Def.'s Mem. at 3). As set forth above, the statutory definition of a "vessel" does not expressly include the term "time charterer," although it does include the phrase "charter or bareboat charterer."  Thus, the issue of defendant's responsibility in this case depends on whether it had contractual obligations to the vessel owner under the time charter agreement or whether it had an independent legal duty to the longshoremen.

### A.   Summary Judgment Standard

It is well-settled that a party moving for summary judgment has the burden of establishing that no genuine issue of material fact is in dispute and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990).  Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d

---

[16] The Court notes that it seems likely that the principle of judicial estoppel would not apply here. Even assuming that defendant's present position is inconsistent with a previous position, the court's endorsement of a voluntary dismissal cannot be considered an "adoption" of the earlier position.  See Bates v. Long Island R. Co., 997 F.2d 1028, 10 (2d Cir. 1993) (holding that "[a] settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel") (internal quotations omitted)).

Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating

that "[s]ummary judgment is a drastic remedy and should be applied sparingly"), the Court

should not grant summary judgment unless "it is quite clear what the truth is [and] that no

genuine issue remains for trial." Auletta v. Tully, 576 F. Supp. 191, 195 (N.D.N.Y. 1983)

(internal quotation marks and citations omitted), aff'd, 732 F.2d 142 (2d Cir. 1984).  In addition,

"'the inferences to be drawn from the underlying facts . . . must be viewed in the light most

favorable to the party opposing the motion.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962));

see also Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999)

(stating that "[w]hen considering a motion for summary judgment the court must draw all factual

inferences and resolve all ambiguities in favor of the nonmoving party") (abrogated on other

grounds by Kessler v. Westchester County Dept. of Soc. Servs., 461 F.3d 199 (2d Cir. 2006)).

Once the moving party discharges its burden of proof under Rule 56(c), the party

opposing summary judgment "has the burden of coming forward with 'specific facts showing

that there is a genuine issue for trial.'"  Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858

(S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)).  Rule 56(e) "provides that a party opposing a

properly supported motion for summary judgment may not rest upon mere allegation or denials

of his pleading."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  Indeed, "the mere existence

of some alleged factual dispute between the parties" alone will not defeat a properly supported

motion for summary judgment.  Id. at 247-48 (emphasis in original).  Rather, enough evidence

must favor the non-moving party's case such that a jury could return a verdict in its favor.  Id. at

248 (internal citation omitted).

B.  Motion to Strike Ms. Grandjean's Declaration

In support of its motion for summary judgment, defendant submitted the Declaration of

Charlotte Grandjean, an "in-house lawyer for CMA."  (Grandjean Decl. ¶ 1).  Plaintiff moves to

strike Ms. Grandjean's Declaration on the grounds that she was not on the vessel at the time of

the accident, and has no personal knowledge as to who was on board the vessel or what occurred

when plaintiff suffered his injury.  (Pl.'s Mem. at 16).  Plaintiff also contends that Ms. Grandjean

should not be permitted to render an expert opinion as to the duties of CMA as a time charterer

because she lacks the necessary qualifications to present opinion testimony on maritime cargo

operations.  (Id. at 16).  Finally, plaintiff objects to her Declaration to the extent that she renders

a legal conclusion.  (Id. at 17).

In her Declaration, Ms. Grandjean states that she is employed in the legal department of

CMA and is responsible for "the legal aspects of ships being chartered into the CMA-CGM

fleet."  (Grandjean Decl. ¶¶ 1, 2).  Among her qualifications, she declares that she has been

appointed as a representative of the French[17] Shipowners' Association on the BIMCO

Documentary Committee which issues standard Charter Party clauses used across the maritime

industry.  (Id. ¶ 5).

In her Declaration, Ms. Grandjean states that on June 19, 2012, RSG, the Owner of the

M/V RANJAN, entered into a time charter with CMA for the use of the vessel for a minimum of

90 days.  (Id. ¶ 6).  She points to Clause 1 of the Time Charter and declares that the Owners of

the vessel "remain responsible for the maintenance and seaworthiness of the vessel."  (Id. ¶ 9

(quoting Ex. A:  "[The] Owners shall provide and pay for. . .all the cabin, deck, engine room and

---

[17] According to Ms. Grandjean, CMA is a corporation organized and existing under the laws of
France. (Grandjean Decl. ¶ 1).

other necessary stores. . . and maintain her class and keep the vessel in a thoroughly efficient state in hull, machinery and equipment")).  Clause 25 of the Time Charter further states that "Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers.  The Owners to remain responsible for the navigation of the vessel, acts of pilot and tugboat, etc. insurance, crew, and all other matters. . . ."  (Id. ¶ 11 (quoting Ex. A)).  Ms. Grandjean states that under this clause, "a broken grate or hold in a grate on the deck is the responsibility of the Owners. . . ."  (Id. ¶ 12).

Ms. Grandjean further states that during the stevedoring operations on October 19, 2013, when Mr. Scavo allegedly put his foot through a defective grating, CMA's only function was to "designate the containers that the stevedores were to load on and discharge from the vessel."  (Id. ¶ 14).  She asserts that CMA "did not supervise the performance of stevedoring services on the M/V RANJAN," nor did CMA have any employees aboard the vessel at the time.  (Id. ¶¶ 15, 16).  She also claims that CMA did not employ or supervise the crew and had no control of the condition of the deck.  (Id. ¶¶ 17, 18).  Finally, she ends her Declaration with the conclusion that "[a]s time charterer, CMA CGM is not responsible for injuries to longshoremen that occur as a result of the condition of the deck of the ship."  (Id. ¶ 19).

In responding to plaintiff's motion to strike Ms. Grandjean's Declaration for lack of personal knowledge, CMA, in its Reply Memorandum,  argues that Ms. Grandjean is a "hybrid fact and expert witness" and based "on her unique background, expertise, and personal knowledge of this matter, she has sufficient personal knowledge to comment on the basic facts concerning CMA CGM's chartering relationship with the RSG. . . ."  (Def.'s Reply at 10).  Defendant further asserts that "as an employee of CMA," Ms. Grandjean "factually knows" that CMA could not have employed any crew members and she has sufficient experience to state that

the shipowner in this matter was responsible for the maintenance and seaworthiness of the vessel.  (Id. at 10-11).

While defendant is correct that the court may consider an expert's testimony as to custom and usage, here the factual representations set forth in Ms. Grandjean's Declaration are not statements made based on custom and usage.  She does not qualify her statements by indicating that "based upon custom and usage," there were no CMA employees on board; no one was aware of the defect; and there was no violation of the turnover duty or the active control duty, or the duty to intervene.  She simply states these factual assertions without providing any basis for the Court to evaluate the statements.  Indeed, defendant asserts that Ms. Grandjean "factually knows" what occurred on the vessel on the date of the incident based upon her experience.

As plaintiff correctly notes, nothing in Ms. Grandjean's Declaration provides a basis for any personal knowledge on Ms. Grandjean's part as to specific actions taken by CMA on the date of the accident or whether there were any CMA employees on board at the time.  (Pl.'s Mem. at 18).  She did not qualify her statements as being based on custom and usage but stated them as fact, even though she conceded during her deposition that she was not present on the date of the accident and did not even learn of the accident until January 20, 2017, more than *three years* after the accident.  Thus, to the extent her Declaration contains factual representations, any knowledge she has must have come from other sources.  (Id. at 26).  Moreover, plaintiff has cited to other statements by defendant that arguably contradict Ms. Grandjean's factual assertions, such that this Court is unable to determine that there are in fact no material facts in dispute.

Under Fed. R. Civ. P. 56, an affidavit or declaration "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and

show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); see also Crown Heights Community Council, Inc. v. Fischer, 63 F. Supp. 2d 231, 241 (E.D.N.Y. 1999).  By her own admission, Ms. Grandjean lacks personal knowledge of what occurred on the date of the accident, who was on board or had control of the deck, or who supervised the stevedoring services on that date.  Similarly, because she was not present, her assertion that CMA's only function was to designate the containers to be loaded and discharged from the vessel is also not based on personal knowledge.

Defendant also cites cases in which courts in this Circuit have allowed expert testimony regarding custom and usage as an aid to the Court in interpreting contract terms.  (Id. at 12 (citing Lee v. Marvel Enters., 386 F. Supp. 2d 236, 246 n.5 (S.D.N.Y. 2005) and New Am. Restoration, Inc. v. WDF, Inc., No. 10 CV 3638, 2014 WL 4467746, at *4 (S.D.N.Y. Aug. 27, 2014)).  To the extent that paragraphs 8-11 of Ms. Grandjean's Declaration are offered as an aid to the Court in interpreting the Time Charter, defendant is correct that the Court may consider her view in interpreting the agreement.  See, e.g., Pearlman v. Cablevision Sys. Corp., No. 10 CV 4992, 2015 WL 8481879 , at *8 (E.D.N.Y. Dec. 8, 2015) (noting that evidence as to "industry custom, practices, usages and terminology" is relevant to aid in the interpretation of ambiguous contract terms).  However, Ms. Grandjean's interpretation of the Charter Agreement and her legal analysis of the ramifications of those clauses cited in the Charter Agreement carry no more weight than that of any attorney interpreting the provisions of a contract.  See id. at *7 (finding "[e]xpert testimony is not useful" if it infringes on role of court).  Indeed, as is clear from the parties' own submissions, numerous courts have also considered the same or similar language in charter agreements and their analysis provides greater guidance to this Court. See generally Turner v. Japan Lines, Ltd., 651 F.2d 1300 (9th Cir. 1981); Fernandez v. Chios

18

Shipping Co., 542 F.2d 145 (2d Cir. 1976).  Thus, Ms. Grandjean's  opinion is of little value to this Court in this respect.

Finally, her legal conclusion that CMA is not responsible for injuries to longshoremen as a result of the condition of the deck, is simply that – a legal conclusion.  Experts[18] are generally not permitted to render an opinion on whether a party has breached a contract provision, nor are they permitted to give an opinion on the ultimate legal issue in the case.  See Deutsch v. Novartis Pharms. Corp., 768 F. Supp. 2d 420, 425 (E.D.N.Y. 2011) (quoting Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005)); see also Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 510 (2d Cir. 1977).

Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, a court may strike or disregard portions of an affidavit  submitted in support of a motion for summary judgment if the affidavit is not based  "on personal knowledge" and fails to set forth evidence that would be admissible at trial.  Fed. R. Civ. P. 56(e).    See Rus, Inc. v. Bay Industries, Inc., 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003) (citing Larouche v. Webster, 175 F.R.D. 452, 455 (S.D.N.Y. 1996) and Epstein v. Kemper Ins. Co., 210 F. Supp. 2d 308, 313-14 (S.D.N.Y. 2002)). Thus, it is respectfully recommended that all of the factual assertions regarding the events of October 19, 2013, including paragraphs 14, 15, 16, 17, and 18, be struck and not considered by the court in connection with the motion for summary judgment.  It is further recommended that to the extent Ms. Grandjean's Declaration offers legal conclusions and evidence that would not be admissible at trial, that it be disregarded by the court in considering the motion for summary judgment,

---

[18] Plaintiff also contends that Ms. Grandjean should not be permitted to render an expert opinion because she is merely a claims examiner, never employed upon a vessel as a crew member, captain, or even in marine transportation, and to the extent she is an attorney, she is not admitted to practice in any state in the United States; rather, her education and professional experience as a lawyer is in foreign law. (Pl.'s Mem. at 24).  Since the Court has determined not to consider her Declaration in large measure due to lack of personal knowledge, there is no need to address her qualifications as an expert.

without prejudice to defendant's offering her testimony at some future date.  See Epstein v. Kemper, 210 F. Supp. 2d at 314, n.3 (permitting future challenges to admissibility where court had merely disregarded portions of submission).

### C. Summary Judgment - Analysis

#### 1. The Time Charter Agreement

A time charter is an agreement for space on a vessel, with the time charterer determining the routes and destination of the ship but not giving the charterer any property interest in the vessel. Klishewich v. Mediterranean Agencies, Inc., 302 F. Supp. 712, 713 (E.D.N.Y. 1969) (citing Bergan v. International Freighting Corp., 254 F.2d 231 (2d Cir. 1958)); see also Migut v. Hyman-Michaels Co., 571 F.2d 352, 355 (6th Cir. 1978).  "Under the time charter, the owner bears continuing responsibility for the seaworthiness of the vessel," Nichimen Co. v. M.V. FARLAND, 462 F.2d 319, 331 (2d Cir. 1972), and the time charterer "assumes no liability flowing from the unseaworthiness of the vessel or the negligence of the crew unless it is shown that the parties to the charter intended otherwise."  Klishewich v. Mediterranean Agencies, Inc., 302 F. Supp. at 713.

According to the Time Charter agreement attached to the Declaration of Ms. Grandjean: "Owners shall provide and pay for. . .all the cabin, deck, engine room and other necessary stores. . . and maintain her class and keep the vessel in a thoroughly efficient state in hull, machinery and equipment." (Grandjean Decl., Ex. A, Clause 1).[19]  According to defendant, this language has been interpreted as meaning that the owners of the vessel "'will keep the vessel fit

---

[19] While the Court disregards many of Ms. Grandjean's allegations that are conclusory or not based on personal knowledge, the Charter agreement does not suffer from these defects, and therefore is properly considered.  See Morris v. Northrop Grumman Corp., 37 F. Supp. 2d 556, 569 (E.D.N.Y. 1999).

throughout the charter term.'" (Def.'s Mem. at 9 (quoting <u>Camiolo v. Felicitas-Rickmers Line</u> <u>K.G.& Co.</u>, 449 F. Supp. 18, 20 (S.D.N.Y. 1978) (internal citations omitted)).  Defendant argues that since the injury here was caused by an allegedly defective or broken grate on the ship's deck, that was the responsibility of the vessel and not the responsibility of CMA.  (<u>Id.</u> at 9-10).

Defendant addresses a series of cases interpreting clauses in the Time Charter similar to Clause 8 here, which provides that the charterer is to "perform all cargo handling at their expense under the supervision and responsibility of the Captain."  (Grandjean Decl., Ex. A, Cl. 8). Although the Ninth Circuit, in <u>Turner v. Japan Lines, Ltd.</u>, 651 F.2d 1300, 1306 (9th Cir.), <u>cert.</u> <u>denied</u>, 459 U.S. 967 (1981), held that a time charterer was responsible for the negligence of a stevedore when it failed to build proper supports for the cargo, resulting in injury to a longshoreman, the Second Circuit has generally taken the contrary view, interpreting language similar to that of Clause 8 to mean that the charterer is not liable to the longshoreman.  <u>See</u> <u>Fernandez Chios Shipping Co.</u>, 542 F.2d 145, 152-53 (2d Cir. 1976).  Instead, the court in <u>Fernandez</u> held that language requiring the time charterer to load and discharge cargo "at their expense and under the supervision of the Captain," created a contractual obligation to indemnify the vessel owner for the longshoreman's injury caused by a defective pallet, but it did not create an independent basis for claims brought by the longshoreman against the time charterer.  <u>Id.</u>; <u>see</u> <u>also</u> 1 T. Schoenbaum, Admiralty and Maritime Law, § 7-10 at 449-50 (2d ed. 1994) (citations omitted).


### 2. A Time Charterer's Legal Duty to The Longshoremen

Defendant argues that the question here is not whether the charterer has any contractual duty to the longshoreman, but whether there is a legal duty, independent of the charter, arising

out of the time charterer's operational control or other actions that would give rise to such a duty. See Kerr-McGee Corp. v. Ma-Ju Marine Services, Inc., 830 F.2d 1332, 1341 (5th Cir. 1987). Defendant argues that even though a time charterer can be considered a "vessel" for purposes of the LHWCA, they are not automatically liable; instead, courts focus on "the legal control and responsibility imposed by the particular relationship." (Def.'s Mem. at 5 (quoting Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc., 830 F.2d at 1343)). Citing the Supreme Court's decision in Howlett v. Birkdale Shipping Co., defendant argues that the vessel owes a limited number of duties to a longshoreman, including: 1) the "turnover duty" which relates to the condition of the vessel when the stevedoring operation commences; 2) the "active control" duty, which requires the shipowner to "'exercise reasonable care to prevent injuries to longshoremen in areas that remain under the active control of the vessel;'" and 3) the "'duty to intervene' when the vessel is aware of an unsafe condition and the stevedore's failure to tend to such condition." 512 U.S. 92, 98 (1994).

Defendant argues that CMA had no employees on board the RANJAN, and CMA did not supervise the stevedores. (Def.'s Mem. at 6). Thus, defendant argues that it could not have breached the turnover duty because it "had no control over the condition of the vessel." (Def.'s Mem. at 6 (citing Giganti v. Polsteam Shipping Co., 997 F.2d 182, 192 (E.D.N.Y. 2013), aff'd 588 Fed. Appx. 74 (2d Cir. 2015))). Since CMA did not own, operate, or maintain the vessel and did not employ or supervise the crew, and no CMA personnel were at the Terminal or aboard the Vessel, CMA argues that it could not be held to have violated the active control duty. (Def.'s Mem. at 7). As for the third duty to intervene, CMA contends that there is no evidence that CMA had actual knowledge of the broken or missing grate and therefore cannot be held liable for breaching this duty. (Id.) Citing the decision in Giganti v. Polsteam Shipping Co., defendant

22

argues that the undisputed material facts demonstrate that CMA did not breach any of the limited duties owed by a time charterer to a longshoreman and therefore summary judgment must be entered in defendant's favor.  (Id. (citing Giganti v. Polsteam Shipping Co., 997 F. Supp. 2d at 197)). Since plaintiff was injured due to an alleged defective condition on the ship, defendant contends that the Court should conclude that there is no liability on the part of CMA either under the law or under Clause 8 of the Time Charter.  (Def.'s Mem. at 14).

In arguing that CMA is liable for plaintiff's injuries, plaintiff argues that a time charterer has a duty to maintain a safe vessel for the longshoremen when it exercises control of the vessel. (Pl.'s Mem. at 26 (citing In re Natures Way Marine, LLC, 984 F. Supp. 2d 1231, 1240-41 (S.D. Ala. 2013)).  The court in In re Natures Way Marine, LLC explained that when a "charterer's personnel operate and man the vessel while the charter is in existence, the charterer is responsible for the negligence of the vessel or its crew." Id.  Plaintiff argues that defendant cannot show that control of the vessel in this instance was limited to the Owner.  (Pl.'s Mem. at 27).  Although defendant claims that it had no employees on board the vessel at the time, plaintiff notes that the evidence offered in support of this assertion is limited to the Declaration of Ms. Grandjean, who was not aboard the ship at the time of the incident and has no personal knowledge of the composition of the crew at the time of accident. (Id.)

Plaintiff argues that not only did CMA assume the owner's duties to maintain the ship, but its discovery responses indicate that CMA had knowledge about the ship's maintenance, and received notice of damage with requests to repair.  (Id. at 32).  Specifically, plaintiff points to CMA's responses to interrogatories in which CMA admitted that it had discoverable information related to the operation of the vessel at the relevant times. (Id. at 28).  Moreover, plaintiff notes that when asked to  identify potential witnesses,  Ms. Grandjean identified Kurt Mittenzwei, a

CMA executive; Randy Herbert, a Norton Lilly employee who boarded the vessel on behalf of CMA on October 19, 2013; Desmond Michael, Norton Lilly's Manager; the plaintiff; and another longshoreman, Vito Perrina.  Not only did CMA fail to indicate in its responses to interrogatories that the vessel owner had relevant information regarding the maintenance of the ship, but CMA failed to disclose the identity of the vessel's owner.  (Id. at 29 (citing Ex. 14)).

In its initial disclosures, CMA stated that the vessel owners might have relevant information, but in disclosing the name of the vessel's owner, CMA identified the then current owner and not the owner of the RANJAN at the time of the incident.  (Id. (citing Ex. 11 at 3)). CMA also stated in its initial disclosures that CMA had "discoverable information related to the charter party agreement and the manning, operation, and *maintenance* of the vessel at issue at the times relevant hereto."  (Id. (quoting Ex. 10 at 3) (emphasis added)).  Plaintiff contends that based on defendant's own responses in discovery, the defendant has admitted having knowledge about the ship's maintenance while indicating only that the ship owner "may" have knowledge. (Id.)  Moreover, in response to CMA's claim that it had no responsibilities with respect to maintenance of the ship,  plaintiff asserts that the ship owner provided copies of the damage reports on the vessel to CMA and CMA was given an opportunity to review the damage and make repairs.  (Id. at 32, Ex. 12).

Plaintiff also points to the testimony of Mittenzwei, CMA's director of East Coast Gulf Operations at the time.  (Id. at 30).  He testified that the RANJAN was "'one of the vessels in our service,'" and that it was his office that arranged for labor with the marine terminal operator.  (Id. (quoting Ex. 9- 4T8-22 to 25)).  Not only could Mittenzwei not recall the name of the Captain of the RANJAN, but CMA did not have the container discharge plan used at the time of the accident.  (Id. at 31).

Plaintiff also notes that CMA identified two Norton Lilly employees as witnesses: Desmond Michael, a manager of Norton Lilly, and Randy Herbert, a Norton Lilly employee who boarded the vessel on the date of the accident.  (Id. at 31).  Defendant concedes that Norton Lilly was the agent for the ship and the charterer, but asserts that its duties were limited to scheduling a harboring pilot, delivering mail and process paperwork.  (Def.'s 56.1 Stmnt ¶ 28).  Plaintiff contends that Norton Lilly's responsibilities are unclear because CMA has failed to provide the original agreement memorializing Norton Lilly's duties and setting forth the relationship between CMA and Norton Lilly. (Pl.'s Mem. at 31).  Indeed, if, as defendant asserts, Norton Lilly's role was limited to the tasks described, it is unclear why Mr. Herbert would have been asked to board the vessel at the time of the accident or why a manager of Norton Lilly would have information relevant to this incident.  Plaintiff contests CMA's representations in this regard and notes that defendant has only provided  a one-page memorandum agreement which specifically references an earlier agreement.  (Id.)  According to plaintiff, the failure to provide the agreement justifies an adverse inference as to CMA's relationship with Norton Lilly and CMA's control and oversight of the vessel.

In its Reply, CMA argues that plaintiff has not submitted any admissible evidence that CMA exerted control over the vessel and has proffered no facts indicating that CMA breached any duty owed to plaintiff.  (Def.'s Reply at 13).  Defendant argues that its discovery responses indicating that it had knowledge of the maintenance and its failure to disclose the name of the RANJAN's Owner is not sufficient to create a genuine issue of material fact.  (Id.)  Nor does plaintiff's effort to create uncertainty as to the role played by Norton Lilly establish liability. (Id.)

While defendant may be correct that plaintiff  may not prove at trial that CMA owed a duty to plaintiff, it is defendant's burden in moving for summary judgment to establish that there are no genuine issues of material fact in dispute.  Defendant argues that "the duty by the charterer in tort should . . . arise out of the time charterer's operational control or other actions that give rise to such duties."  (Def.'s Mem at 12, n.5).  In reviewing defendant's Memorandum of Law arguing that CMA had no duty because it did not have control of the vessel, it is notable that defendant fails to cite any evidentiary support for these arguments.  (See id. at 6-8).  To the extent that CMA has made the same assertions in its Rule 56.1 Statement of Material Facts, it relies exclusively on the Declaration of Ms. Grandjean, which the Court has now disregarded in large measure, at least insofar as she sets forth assertions regarding who was on board the vessel and what occurred on the date of the accident.  (See Def.'s 56.1 Stmnt ¶¶ 17-27).  Thus, plaintiff correctly notes that defendant's assertion of no control over the vessel is not supported by any actual evidence.

Specifically, CMA fails to provide any testimony as to who did what on the day of the accident, maintaining that it had no employees on board at that time.  (Def.'s 56.1 Stmnt ¶ 24). The captain of the vessel, an agent of CMA under the charter agreement, would be an obvious fact witness in this respect, but plaintiff has been unable to depose that individual because CMA's witness could not remember who it was.  (Pl.'s Mem. at 30-31).  CMA also fails to fully explain the role of the employees of its agent, Norton Lilly, on the day of the accident, providing only an incomplete version of its agreement with Norton Lilly.  (Pl.'s 56.1 Resp. ¶ 28). Crucially, CMA does not address why it received notice of problems on board the vessel and was afforded an opportunity to correct them.  (Pl.'s Mem. at 32).  While plaintiff ultimately may not

26

meet his burden to prevail on the merits, these deficiencies reveal that defendant has not met its burden for summary judgment.

The Court finds that material issues of fact remain in dispute as to whether defendant's actions gave rise to a duty to the plaintiff and whether any such duty was breached and whether plaintiff may eventually prevail on its estoppel argument.  Accordingly, is respectfully recommended that summary judgment be denied.

<u>CONCLUSION</u>

In light of the foregoing, the Court respectfully recommends that defendant's motion for summary judgment be denied, finding that there are material issues of fact in dispute.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        March 4, 2021

                                        /s/ Cheryl L. Pollak
                                        Cheryl L. Pollak
                                        Chief United States Magistrate Judge
                                        Eastern District of New York